Exhibit 1

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**

| | |
|---|---|
| STREET ADDRESS: | 330 West Broadway |
| MAILING ADDRESS: | 330 West Broadway |
| CITY AND ZIP CODE: | San Diego, CA 92101 |
| BRANCH NAME: | Central |
| TELEPHONE NUMBER: | (619) 450-7066 |

PLAINTIFF(S) / PETITIONER(S):     Kenneth Boone

DEFENDANT(S) / RESPONDENT(S):  Paloma Health et.al.

BOONE VS. PALOMA HEALTH

| NOTICE OF CASE ASSIGNMENT and CASE MANAGEMENT CONFERENCE | CASE NUMBER: 37-2013-00048126-CU-OE-CTL |
|---|---|

## CASE ASSIGNMENT

Judge:  Joel M. Pressman                                    Department: C-66

**COMPLAINT/PETITION FILED:** 05/09/2013

| TYPE OF HEARING SCHEDULED | DATE | TIME | DEPT | JUDGE |
|---|---|---|---|---|
| Civil Case Management Conference | 10/25/2013 | 08:30 am | C-66 | Joel M. Pressman |

A case management statement must be completed by counsel for all parties or self-represented litigants and timely filed with the court at least 15 days prior to the initial case management conference. (San Diego Local Rules, Division II, CRC Rule 3.725).

All counsel of record or parties in pro per shall appear at the Case Management Conference, be familiar with the case, and be fully prepared to participate effectively in the hearing, including discussions of ADR* options.

IT IS THE DUTY OF EACH PLAINTIFF (AND CROSS-COMPLAINANT) TO SERVE A COPY OF THIS NOTICE WITH THE COMPLAINT (AND CROSS-COMPLAINT), THE ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION FORM (SDSC FORM #CIV-730), A STIPULATION TO USE ALTERNATIVE DISPUTE RESOLUTION (ADR) (SDSC FORM #CIV-359), AND OTHER DOCUMENTS AS SET OUT IN SDSC LOCAL RULE 2.1.5.

ALL COUNSEL WILL BE EXPECTED TO BE FAMILIAR WITH SUPERIOR COURT RULES WHICH HAVE BEEN PUBLISHED AS DIVISION II, AND WILL BE STRICTLY ENFORCED.

TIME STANDARDS: The following timeframes apply to general civil cases and must be adhered to unless you have requested and been granted an extension of time. General civil cases consist of all civil cases except: small claims proceedings, civil petitions, unlawful detainer proceedings, probate, guardianship, conservatorship, juvenile, parking citation appeals, and family law proceedings.

COMPLAINTS: Complaints and all other documents listed in SDSC Local Rule 2.1.5 must be served on all named defendants, and a Certificate of Service (SDSC form #CIV-345) filed within 60 days of filing.

DEFENDANT'S APPEARANCE: Defendant must generally appear within 30 days of service of the complaint. (Plaintiff may stipulate to no more than 15 day extension which must be in writing and filed with the Court.) (SDSC Local Rule 2.1.6)

JURY FEES: In order to preserve the right to a jury trial, each party demanding a jury trial shall pay an advance jury fee in the amount of one hundred fifty dollars ($150) for each party on or before the date scheduled for the initial case management conference in the action.

*ALTERNATIVE DISPUTE RESOLUTION (ADR): THE COURT ENCOURAGES YOU TO CONSIDER UTILIZING VARIOUS ALTERNATIVES TO TRIAL, INCLUDING MEDIATION AND ARBITRATION, PRIOR TO THE CASE MANAGEMENT CONFERENCE. PARTIES MAY FILE THE ATTACHED STIPULATION TO USE ALTERNATIVE DISPUTE RESOLUTION (SDSC FORM #CIV-359).

# Superior Court of California
## County of San Diego

# NOTICE OF ELIGIBILITY TO eFILE
# AND ASSIGNMENT TO IMAGING DEPARTMENT

**This case is eligible for eFiling. Should you prefer to electronically file documents, refer to General Order 010313 at www.sdcourt.ca.gov for rules and procedures or contact the Court's eFiling vendor at www.onelegal.com for information.**

**This case has been assigned to an Imaging Department and original documents attached to pleadings filed with the court will be imaged and destroyed. Original documents should not be filed with pleadings. If necessary, they should be lodged with the court under California Rules of Court, rule 3.1302(b).**

On August 1, 2011 the San Diego Superior Court began the Electronic Filing and Imaging Pilot Program ("Program"). As of August 1, 2011 in all new cases assigned to an Imaging Department all filings will be imaged electronically and the electronic version of the document will be the official court file. The official court file will be electronic and accessible at one of the kiosks located in the Civil Business Office and on the Internet through the court's website.

You should be aware that the electronic copy of the filed document(s) will be the official court record pursuant to Government Code section 68150. The paper filing will be imaged and held for 30 days. After that time it will be destroyed and recycled. **Thus, you should not attach any original documents to pleadings filed with the San Diego Superior Court. Original documents filed with the court will be imaged and destroyed except those documents specified in California Rules of Court, rule 3.1806.** Any original documents necessary for a motion hearing or trial shall be lodged in advance of the hearing pursuant to California Rules of Court, rule 3.1302(b).

It is the duty of each plaintiff, cross-complainant or petitioner to serve a copy of this notice with the complaint, cross-complaint or petition on all parties in the action.

On all pleadings filed after the initial case originating filing, all parties must, to the extent it is feasible to do so, place the words **"IMAGED FILE"** in all caps immediately under the title of the pleading on all subsequent pleadings filed in the action.

# Please refer to the General Order - Imaging located on the San Diego Superior Court website at:

http://www.sdcourt.ca.gov/CivilImagingGeneralOrder



# SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO

## ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION

CASE NUMBER: 37-2013-00048126-CU-OE-CTL   CASE TITLE:

Boone vs. Paloma Health

<u>NOTICE:</u> All plaintiffs/cross-complainants in a general civil case are required to serve a copy of the following three forms on each defendant/cross-defendant, together with the complaint/cross-complaint:

        (1) this Alternative Dispute Resolution (ADR) Information form (SDSC form #CIV-730),
        (2) the Stipulation to Use Alternative Dispute Resolution (ADR) form (SDSC form #CIV-359), <u>*and*</u>
        (3) the Notice of Case Assignment form (SDSC form #CIV-721).

Most civil disputes are resolved without filing a lawsuit, and most civil lawsuits are resolved without a trial. The courts, community organizations, and private providers offer a variety of Alternative Dispute Resolution (ADR) processes to help people resolve disputes without a trial. The San Diego Superior Court expects that litigants will utilize some form of ADR as a mechanism for case settlement before trial, and it may be beneficial to do this early in the case.

Below is some information about the potential advantages and disadvantages of ADR, the most common types of ADR, and how to find a local ADR program or neutral. A form for agreeing to use ADR is attached (SDSC form #CIV-359).

## Potential Advantages and Disadvantages of ADR

ADR may have a variety of advantages or disadvantages over a trial, depending on the type of ADR process used and the particular case:

| Potential Advantages | Potential Disadvantages |
| --- | --- |
| • Saves time | • May take more time and money if ADR does not resolve the dispute |
| • Saves money | |
| • Gives parties more control over the dispute resolution process and outcome | • Procedures to learn about the other side's case (discovery), jury trial, appeal, and other court protections may be limited or unavailable |
| • Preserves or improves relationships | |

## Most Common Types of ADR

You can read more information about these ADR processes and watch videos that demonstrate them on the court's ADR webpage at http://www.sdcourt.ca.gov/adr.

**Mediation:** A neutral person called a "mediator" helps the parties communicate in an effective and constructive manner so they can try to settle their dispute. The mediator does not decide the outcome, but helps the parties to do so. Mediation is usually confidential, and may be particularly useful when parties want or need to have an ongoing relationship, such as in disputes between family members, neighbors, co-workers, or business partners, or when parties want to discuss non-legal concerns or creative resolutions that could not be ordered at a trial.

**Settlement Conference:** A judge or another neutral person called a "settlement officer" helps the parties to understand the strengths and weaknesses of their case and to discuss settlement. The judge or settlement officer does not make a decision in the case but helps the parties to negotiate a settlement. Settlement conferences may be particularly helpful when the parties have very different ideas about the likely outcome of a trial and would like an experienced neutral to help guide them toward a resolution.

**Arbitration:** A neutral person called an "arbitrator" considers arguments and evidence presented by each side and then decides the outcome of the dispute. Arbitration is less formal than a trial, and the rules of evidence are usually relaxed. If the parties agree to binding arbitration, they waive their right to a trial and agree to accept the arbitrator's decision as final. With nonbinding arbitration, any party may reject the arbitrator's decision and request a trial. Arbitration may be appropriate when the parties want another person to decide the outcome of their dispute but would like to avoid the formality, time, and expense of a trial.

**Other ADR Processes:** There are several other types of ADR which are not offered through the court but which may be obtained privately, including neutral evaluation, conciliation, fact finding, mini-trials, and summary jury trials. Sometimes parties will try a combination of ADR processes. The important thing is to try to find the type or types of ADR that are most likely to resolve your dispute. Be sure to learn about the rules of any ADR program and the qualifications of any neutral you are considering, and about their fees.

## Local ADR Programs for Civil Cases

**Mediation:** The San Diego Superior Court maintains a Civil Mediation Panel of approved mediators who have met certain minimum qualifications and have agreed to charge $150 per hour for each of the first two (2) hours of mediation and their regular hourly rate thereafter in court-referred mediations.

On-line mediator search and selection: Go to the court's ADR webpage at www.sdcourt.ca.gov/adr and click on the "Mediator Search" to review individual mediator profiles containing detailed information about each mediator including their dispute resolution training, relevant experience, ADR specialty, education and employment history, mediation style, and fees and to submit an on-line Mediator Selection Form (SDSC form #CIV-005). The Civil Mediation Panel List, the Available Mediator List, individual Mediator Profiles, and Mediator Selection Form (CIV-005) can also be printed from the court's ADR webpage and are available at the Mediation Program Office or Civil Business Office at each court location.

**Settlement Conference:** The judge may order your case to a mandatory settlement conference, or voluntary settlement conferences may be requested from the court if the parties certify that: (1) settlement negotiations between the parties have been pursued, demands and offers have been tendered in good faith, and resolution has failed; (2) a judicially supervised settlement conference presents a substantial opportunity for settlement; and (3) the case has developed to a point where all parties are legally and factually prepared to present the issues for settlement consideration and further discovery for settlement purposes is not required. Refer to SDSC Local Rule 2.2.1 for more information. To schedule a settlement conference, contact the department to which your case is assigned.

**Arbitration:** The San Diego Superior Court maintains a panel of approved judicial arbitrators who have practiced law for a minimum of five years and who have a certain amount of trial and/or arbitration experience. Refer to SDSC Local Rules Division II, Chapter III and Code Civ. Proc. § 1141.10 et seq or contact the Arbitration Program Office at (619) 450-7300 for more information.

More information about court-connected ADR: Visit the court's ADR webpage at www.sdcourt.ca.gov/adr or contact the court's Mediation/Arbitration Office at (619) 450-7300.

**Dispute Resolution Programs Act (DRPA) funded ADR Programs:** The following community dispute resolution programs are funded under DRPA (Bus. and Prof. Code §§ 465 et seq.):
- In Central, East, and South San Diego County, contact the National Conflict Resolution Center (NCRC) at www.ncrconline.com or (619) 238-2400.
- In North San Diego County, contact North County Lifeline, Inc. at www.nclifeline.org or (760) 726-4900.

**Private ADR:** To find a private ADR program or neutral, search the Internet, your local telephone or business directory, or legal newspaper for dispute resolution, mediation, settlement, or arbitration services.

## Legal Representation and Advice

To participate effectively in ADR, it is generally important to understand your legal rights and responsibilities and the likely outcomes if you went to trial. ADR neutrals are not allowed to represent or to give legal advice to the participants in the ADR process. If you do not already have an attorney, the California State Bar or your local County Bar Association can assist you in finding an attorney. Information about obtaining free and low cost legal assistance is also available on the California courts website at www.courtinfo.ca.gov/selfhelp/lowcost.

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO

STREET ADDRESS: 330 West Broadway

MAILING ADDRESS: 330 West Broadway

CITY, STATE, & ZIP CODE: San Diego, CA 92101-3827

BRANCH NAME: Central

PLAINTIFF(S): Kenneth Boone

DEFENDANT(S): Paloma Health et.al.

SHORT TITLE: BOONE VS. PALOMA HEALTH

| STIPULATION TO USE ALTERNATIVE DISPUTE RESOLUTION (ADR) | CASE NUMBER:<br>37-2013-00048126-CU-OE-CTL |
|---|---|

Judge: Joel M. Pressman — Department: C-66

The parties and their attorneys stipulate that the matter is at issue and the claims in this action shall be submitted to the following alternative dispute resolution (ADR) process. Selection of any of these options will not delay any case management timelines.

- [ ] Mediation (court-connected)
- [ ] Mediation (private)
- [ ] Voluntary settlement conference (private)
- [ ] Neutral evaluation (private)
- [ ] Non-binding private arbitration
- [ ] Binding private arbitration
- [ ] Non-binding judicial arbitration (discovery until 15 days before trial)
- [ ] Non-binding judicial arbitration (discovery until 30 days before trial)
- [ ] Other (specify e.g., private mini-trial, private judge, etc.): _____

_____

It is also stipulated that the following shall serve as arbitrator, mediator or other neutral: (Name) _____

_____

_____

Alternate neutral (for court Civil Mediation Program and arbitration only): _____

Date: _____    Date: _____

Name of Plaintiff    Name of Defendant

Signature    Signature

Name of Plaintiff's Attorney    Name of Defendant's Attorney

Signature    Signature

If there are more parties and/or attorneys, please attach additional completed and fully executed sheets.

It is the duty of the parties to notify the court of any settlement pursuant to Cal. Rules of Court, rule 3.1385. Upon notification of the settlement, the court will place this matter on a 45-day dismissal calendar.

No new parties may be added without leave of court.

**IT IS SO ORDERED.**

Dated: 05/10/2013    JUDGE OF THE SUPERIOR COURT

3

# SUMMONS
## *(CITACION JUDICIAL)*



FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

CIVIL

2013 MAY -9 P 2:29

**NOTICE TO DEFENDANT:** PALOMAR HEALTH, a purported California
*(AVISO AL DEMANDADO):*

Healthcare District; PAT DILLON, an individual; CRAIG PARRISH, an individual;
JUDITH MANDEVILLE, an individual; and DOES 1-35, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

KENNETH BOONE

---

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

---

| The name and address of the court is: Superior Court of California, | CASE NUMBER: *(Número del Caso)* **37-2013-00048126-CU-OE-CTL** |
|---|---|
| *(El nombre y dirección de la corte es:)* County of San Diego - Central Division | |

330 West Broadway
San Diego, CA 92101

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es:)*
Nathan N. Kased, Hong & Kased LLP, 5670 Wilshire Boulevard, Suite 1800, Los Angeles, California 90036

Phone: (619) 528-2530

| DATE: ~~May 9, 2013~~ **MAY 10 2013** | Clerk, by **A. Rhodes** | , Deputy |
|---|---|---|
| *(Fecha)* | *(Secretario)* | *(Adjunto)* |

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)      ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)      ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)      ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Nathan N. Kased (SBN 251400)<br>Hong & Kased LLP<br>5670 Wilshire Boulevard, Suite 1800<br>Los Angeles, California 90036<br>TELEPHONE NO: 213-222-6560    FAX NO: 213-985-1545<br>ATTORNEY FOR *(Name):* Plaintiff, Kenneth Boone | CIVIL BUSINESS OFFICE D<br>CEPT<br>2013 MAY -9 P 2:19<br><br>MAY 9 2013 PM 1:34 |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** San Diego - Central Division
STREET ADDRESS: 330 West Broadway
MAILING ADDRESS: 330 West Broadway
CITY AND ZIP CODE: San Diego, California 92101
BRANCH NAME: Hall of Justice Courthouse

CASE NAME:
Kenneth Boone v. Palomar Health, et al.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| [✓] Unlimited (Amount demanded exceeds $25,000)   [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter   [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | **37-2013-00048126-CU-OE-CTL**<br>JUDGE:<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

**Employment**
[ ] Wrongful termination (36)
[✓] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [ ] is [✓] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
a. [ ] Large number of separately represented parties
b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
c. [ ] Substantial amount of documentary evidence
d. [ ] Large number of witnesses
e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [✓] monetary b. [✓] nonmonetary; declaratory or injunctive relief c. [ ] punitive
4. Number of causes of action *(specify):*
5. This case [ ] is [✓] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: 5/9/2013

Nathan N. Kased
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courtinfo.ca.gov |

Nathan N. Kased (State Bar No. 251400)
HONG & KASED LLP
5670 Wilshire Boulevard, Suite 1800
Los Angeles, California 90036
Phone: 213-222-6560
Fax: 213-985-1545
Email: nathan@hongkased.com

Attorneys for Plaintiff
KENNETH BOONE

FILED
CIVIL BUSINESS OFFICE SAN DIEGO
CENTRAL DIVISION

2013 MAY -9 P 2:19

CLERK SUPERIOR COURT
SAN DIEGO COUNTY, CA

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF SAN DIEGO - CENTRAL DIVISION

| | |
|---|---|
| KENNETH BOONE, an Individual,<br><br>                    Plaintiff,<br><br>vs.<br><br>PALOMAR HEALTH, a purported California Healthcare District; PAT DILLON, an Individual; CRAIG PARRISH, an Individual; JUDITH MANDEVILLE, an Individual; and DOES 1-35, Inclusive,<br><br>                    Defendants. | Case No. 37-2013-00048126-CU-OE-CTL<br><br>**Unlimited Civil Case**<br><br>**Complaint For:**<br><br>**1. Willful Violation of the Family Medical Leave Act of 1993 (29 U.S.C. § 2601, *et seq.*);**<br><br>**2. Breach of Contract to Pay Severance;**<br><br>**3. For Failure to Pay Earned Wages (Cal. Labor Code § 201)**<br><br>**4. Waiting Time Penalties (Cal. Lab. Code § 203); and**<br><br>**5. Unfair Competition (Cal. Bus. & Prof. Code § 17200, *et seq.*).**<br><br>**Demand for Jury Trial** |

Plaintiff KENNETH BOONE complains and alleges against Defendants PALOMAR HEALTH, a purported California Healthcare District; PAT DILLON, an individual; CRAIG PARRISH, an individual; JUDITH MANDEVILLE, an individual; and DOES 1-35, inclusive, as follows:

1. Plaintiff KENNETH BOONE (hereinafter alternatively referred to as "Boone" or "Plaintiff") is, and at all times herein relevant was, a resident of the State of California.

2. The acts alleged herein took place in the County of San Diego, State of California.

3. Plaintiff is informed and believes and thereon alleges that Defendant PALOMAR HEALTH (formerly PALOMAR POMERADO HEALTH and hereinafter "PALOMAR"), is , and at all times herein relevant was, a purported California Healthcare District, doing business in the County of San Diego, State of California.

4. Plaintiff is informed and believes and thereon alleges that Defendant PAT DILLON (hereinafter "Mr. Dillon") is, and at all times herein relevant was, an individual working and residing in the County of San Diego.

5. Plaintiff is informed and believes and thereon alleges that Defendant CRAIG PARRISH (hereinafter "Mr. Parrish") is, and at all times herein relevant was, an individual working and residing in the County of San Diego.

6. Plaintiff is informed and believes and thereon alleges that Defendant JUDITH MANDEVILLE (hereinafter "Ms. Mandeville") is, and at all times herein relevant was, an individual working and residing in the County of San Diego.

7. Plaintiff is ignorant of the true names and capacities of defendants sued herein as DOES 1 through 35, inclusive, and therefore sues said defendants by such fictitious names. Plaintiff will amend this Complaint to allege the true names and capacities of such fictitiously named defendants when they are ascertained.

8. Plaintiff is informed and believes and thereon alleges that at all times herein relevant each such fictitiously named defendant was and is responsible in some manner for the occurrences herein alleged, and that Plaintiff's injuries and/or damages were and are directly and/or proximately caused thereby. Plaintiff is informed and believes and thereon alleges that each such fictitiously

HONG & KASED LLP
5670 WILSHIRE BOULEVARD, SUITE 1800
LOS ANGELES, CALIFORNIA 90036
P: 213.222.6560
F: 213.985.1545

1 named defendant is directly and/or indirectly liable on one or more of the causes of action set forth

2 herein.

3      9.     Plaintiff is informed and believes and thereon alleges that at all times herein relevant,

4 each of the Defendants, including each fictitiously named defendant, was the agent, servant, joint

5 venturer, authorized representative and/or employee of each of the remaining defendants, and,

6 except as provided herein, in doing the acts and things hereinafter alleged, was acting within the

7 course and scope of said agency, joint venture, representation, servitude and/or employment,

8 consent, approval, and subsequent satisfaction of each of the remaining defendants. Each of the

9 Defendants was authorized and empowered by each of the other defendants to act and did act as the

10 principal, employee or agent of each of the other defendants. Plaintiff is further informed and

11 believes and thereon alleges that, except as provided herein, each defendant was acting within the

12 course and scope of his authority in performing the acts herein alleged, and that the acts of each

13 defendant as alleged herein were authorized and/or ratified by the other defendants.

14 <u>FACTS COMMON TO ALL CAUSES OF ACTION</u>

15      10.     Plaintiff, a 61-year-old disabled male, worked in various capacities with PALOMAR

16 for over 10 years. Prior to his discharge, Plaintiff served as one of three Local Area Network (LAN)

17 Analysts at the Innovation Office of PALOMAR. Plaintiff was a valuable asset to PALOMAR

18 throughout his over 10 years with the company. He made countless and significant contributions to

19 PALOMAR and its Information Technology (IT) security. He left an indelible mark upon those with

20 whom he worked. Plaintiff's employment record was outstanding except for the unlawful adverse

21 employment actions taken against him, as described herein.

22      11.     During his employment with PALOMAR, Plaintiff suffered multiple instances of

23 retaliation for following company policy and procedure related to integrity and security of highly

24 sensitive information, such as Health Insurance Portability Accountability Act (HIPAA) data,

25 personnel data, legal department data, SB1386 protected data, etc. Plaintiff was ordered multiple

26 times by various supervisors to provide employees with access to HIPAA protected information,

27 which was in direct violation of company policy. Because Plaintiff informed the supervisors that

28

HONG & KASED LLP
5670 WILSHIRE BOULEVARD, SUITE 1800
LOS ANGELES, CALIFORNIA 90036
P: 213.222.6560
F: 213.985.1545

their orders violated company policies and asked them to comply with the policies, he was verbally reprimanded and given lower marks in his annual performance reviews.

12. During Plaintiff's employment with PALOMAR, Plaintiff informed PALOMAR of various privacy law violations including violations of HIPAA, SB1386, etc., and various software licensing violations occurring internally. In response, PALOMAR minimized and ignored Plaintiff's reporting, except when it took adverse employment actions toward Plaintiff.

13. Also during Plaintiff's employment with PALOMAR, PALOMAR systematically completed Reductions in Force (RIF) in which PALOMAR dismissed mostly older employees (e.g., those forty years or older). An example of this targeted group is when PALOMAR laid off Mark Miller and Marty Gordon after Plaintiff's employment had been terminated. Both Mr. Miller and Mr. Gordon were informed that the function they served was being outsourced, but it was in fact a cover to terminate older employees.

14. In February 2010, PALOMAR hired Mr. Dillon as the Director of Information Systems, which is the head of Plaintiff's department. Mr. Dillon held weekly meetings with subordinate staff to inform them that they should do things his way or they would be considered "the other guys" and subject to ridicule in the form of adverse employment action. Mr. Dillon's way meant giving anyone whatever access they wanted, without regard to policies, procedures, or laws.

15. In June 2010, Plaintiff began seeing his psychologist on a biweekly basis to help cope with the stressful environment caused by Mr. Dillon.

16. In September 2010, Mr. Dillon called Plaintiff into his office for a one-on-one discussion. Mr. Dillon stated that numerous coworkers had expressed to him that they were concerned about the personal welfare of Plaintiff due to his recent behavior. Mr. Dillon also stated that he was concerned about Plaintiff, as it was clear (to him and others) Plaintiff was not alright. Despite this perception, Mr. Dillon did not continue the dialogue with Plaintiff to determine if he needed time away or some other workplace accommodation. In fact, Mr. Dillon did nothing in terms of accommodation.

///

///

HONG & KASED LLP
5670 WILSHIRE BOULEVARD, SUITE 1800
LOS ANGELES, CALIFORNIA 90036
P: 213.222.6560
F: 213.985.1545

HONG & KASED LLP
5670 WILSHIRE BOULEVARD, SUITE 1800
LOS ANGELES, CALIFORNIA 90036
P: 213.222.6560
F: 213.985.1545

17.     On or about October 27, 2010, Plaintiff had a deadline at work that he and Mr. Dillon knew would be impossible to meet. On or about October 26, 2010, Plaintiff went to work but was completely overwhelmed by the stress of his job and his ever-increasing depression. The pressure and demanding assignments from Mr. Dillon caused real harm to Plaintiff. The evening of on or about October 26, 2010, Plaintiff attempted suicide. On or about October 27, 2010, Plaintiff was deemed incapable of returning to work by the treating physician where he was hospitalized.

18.     On or about October 28, 2010, Plaintiff's daughter called Mr. Dillon to inform Mr. Dillon that Plaintiff was in the hospital and would not be returning to work anytime soon. Mr. Dillon thanked Plaintiff's daughter for the phone call and stated that he "was worried that something like this was going to happen" to Plaintiff.

19.     In November 2010, Plaintiff contacted Ms. Mandeville in Human Resources (HR) to inform her that his doctor had put him on disability for twelve (12) weeks initially and that he wished to take Family Medical Leave Act (FMLA) leave. Plaintiff was placed on FMLA leave from on or about October 27, 2010 until on or about January 19, 2011.

20.     At the conclusion of Plaintiff's FMLA leave, Plaintiff returned to PALOMAR to meet with Mr. Parrish, his immediate supervisor, and discuss his return to work. Plaintiff, at the urging of his doctor, requested a little more time off at the meeting—an exceedingly reasonable accommodation request which would not have posed an undue hardship on PALOMAR and which PALOMAR easily could have granted. In response, Mr. Parrish informed Plaintiff his job had been eliminated for business continuity, a "new" job with substantially the same duties had been created, and Plaintiff could apply for the new job if he wanted.

21.     The next day following his meeting with Mr. Parrish, Plaintiff received a letter dated January 20, 2011, indicating that his job had been eliminated. A true and correct copy of this letter is attached as Exhibit A and incorporated by reference herein. Plaintiff was completely blindsided by PALOMAR eliminating his job; it caused aggravation for Plaintiff and undermined the progress he had made in his depression since his suicide attempt.

22.     From February 2011 to April 2011, Plaintiff contacted Ms. Mandeville multiple times about his employment status. Ms. Mandeville explained to Plaintiff that he was an employee

HONG & KASED LLP
5670 WILSHIRE BOULEVARD, SUITE 1800
LOS ANGELES, CALIFORNIA 90036
P: 213.222.6560
F: 213.985.1545

1  without a job and that if he did not get hired for any open position, he would be administratively

2  discharged 180 days after his last day of actual work, i.e., on April 25, 2011.

3       23.    On or about May 11, 2011, Plaintiff sent an email to Ms. Mandeville asking about his

4  employment status. Ms. Mandeville responded that she had entered Plaintiff's termination on May

5  10, 2011. Plaintiff received his official termination letter a few days later, which stated that "Your

6  separation is not related to your performance." A true and correct copy of this letter is attached as

7  Exhibit B and incorporated by reference herein.

8       24.    Up until Plaintiff's last day of actual work, Plaintiff accrued about ten (10) weeks of

9  Paid Time Off (PTO) days. Plaintiff received an electronic deposit for accrued PTO on May 27,

10 2011, a full 17 days after his termination date. A true and correct copy of the May 27, 2011 wage

11 statement corresponding to Plaintiff's final payout is attached as Exhibit C and incorporated by

12 reference herein. Plaintiff should have been paid his vested PTO in full on the effective date of his

13 termination in accordance with California's final pay laws.

14      25.    At all times relevant to Plaintiff's employment, PALOMAR maintained a "Severance

15 Pay" policy, which entitled full and part-time PALOMAR employees terminated without cause (like

16 Plaintiff) to severance benefits. A true and correct copy of this policy is attached as Exhibit D and

17 incorporated by reference herein. At a minimum, Plaintiff was entitled to 10 weeks' severance pay

18 and a one-month Consolidated Omnibus Budget Reconciliation Act (COBRA) subsidy under section

19 III.E.7 of the policy, given his over 10 years employment with PALOMAR. This is equivalent to

20 roughly $1,100. Plaintiff's final rate of pay at the time of Plaintiff's termination was approximately

21 $95,370. Dividing this figure by 52 weeks yields Plaintiff's weekly wage rate—i.e., $1,834.04.

22 This figure, multiplied by his 10-week severance entitlement, yields $18,340.38 in unpaid severance

23 wages owed Plaintiff. To date, PALOMAR has failed to furnish Plaintiff with any form of

24 severance or subsidy—a material breach of its employment contract with Plaintiff.

25      26.    Plaintiff wrote a pre-litigation demand to PALOMAR, dated April 16, 2013. In the

26 demand, Plaintiff detailed his claims, demanded payment for the amounts owed to him, and offered

27 to discuss a pre-litigation resolution of this matter. By way of its counsel, PALOMAR responded in

28 a letter dated May 2, 2013, rejecting resolution to Plaintiff's claims.

## FIRST CAUSE OF ACTION

### For Willful Violation of the Family Medical Leave Act of 1993

### (29 U.S.C. § 2601, *et seq.*)

### by Plaintiff Against Defendants PALOMAR, DILLON, PARRISH, MANDEVILLE, and

### DOES 1-5 and 6-15, Inclusive

27.     Plaintiff hereby realleges and incorporates by reference herein each and every preceding paragraph of this Complaint.

28.     Plaintiff at all times herein relevant was an employee covered by the Family Medical Leave Act of 1993 (FMLA), which prohibits an employer from discriminating or retaliating against, or discharging an employee for his exercise of any right under the FMLA, such as the taking of leave due to the employee's serious health condition.  Plaintiff met the eligibility requirements to take FMLA leave, as he was employed by Defendants for at least 12 months and worked at least 1,250 hours during the previous 12-month period. 29 U.S.C. § 2611(2)(A).

29.     Defendants at all times herein relevant were covered employers within the meaning of the FMLA. 29 U.S.C. § 2611(4)(A); 29 C.F.R. 13 § 825.104(d); see also *Mercer v. Borden*, 11 F.Supp. 2d 1190 (C.D. Cal. 1998) ("Since the definition of 'employer' in the FMLA is identical to the definition of 'employer' in the [Fair Labor Standards Act], the Court holds that individuals are potentially subject to liability under the FMLA. The plain language of the FMLA compels this result.").

30.     Plaintiff at all times herein relevant had severe depression.  Plaintiff's severe depression was a "serious health condition", defined in the statute as an illness, injury, impairment or physical or mental condition that involves either 1) inpatient care in a hospital or other care facility, or 2) continuing treatment by a health care provider.  Plaintiff was both hospitalized for his depression and received continuing treatment by his doctor.

31.     Plaintiff gave appropriate notice of his need to be absent from work. "Appropriate notice" was given because Plaintiff could not foresee the need for leave, Plaintiff notified the Defendants as soon as practicable after he learned of the need for leave.  Plaintiff was required to timely notify Defendants of the need for leave, but Plaintiff was not required to specify that the leave

HONG & KASED LLP
5670 WILSHIRE BOULEVARD, SUITE 1800
LOS ANGELES, CALIFORNIA 90036
P: 213.222.6560
F: 213.985.1545

HONG & KASED LLP
5670 WILSHIRE BOULEVARD, SUITE 1800
LOS ANGELES, CALIFORNIA 90036
P: 213.222.6500
F: 213.985.1545

1  was sought under the FMLA, nor was Plaintiff required to mention that Act in the notice. Plaintiff's

2  daughter called to inform Defendants Plaintiff was hospitalized and would need to take leave.

3  Plaintiff followed up with HR, providing his doctor's request for FMLA leave.

4      32.    Plaintiff was not reinstated in his job upon return from leave, was not placed in a

5  substantially equivalent position upon his return from leave, and was terminated after returning from

6  leave. Plaintiff was informed at the expiration of his leave that his position had been eliminated.

7  Plaintiff was informed he was an employee without a job and that he would be administratively

8  terminated 180 days after his last day of actual work.

9      33.    Plaintiff's taking leave was a motivating factor in Defendant's decision to terminate

10  Plaintiff's position and employment. Defendants expressly state that Plaintiff's termination was not

11  a result of performance, but rather for his failure to return to work because of his disability. See

12  Exhibit C.

13      34.    Defendants violated the FMLA by adversely treating Plaintiff, discriminating and

14  retaliating against him, interfering with his use of such leave and for discharging him, at least in

15  part, and otherwise adversely treating him for requesting and using medical leave under the FMLA

16  in the manner described above.

17      35.    As a result of Defendants' willful violation of Plaintiff's rights, Plaintiff has suffered

18  and continues to suffer substantial losses in earnings, bonuses, deferred compensation, and other

19  employment benefits, and has suffered and continues to suffer embarrassment, humiliation, harm to

20  his reputation, and mental anguish all to his damage in an amount according to proof.

21      36.    Defendants committed the acts alleged herein willfully, maliciously, fraudulently,

22  oppressively, with the wrongful intention of injuring Plaintiff, from an improper and evil motive

23  amounting to malice, and in conscious disregard of Plaintiff's rights.

24      37.    As a result of Defendants' violation of Plaintiff's rights as alleged herein, Plaintiff is

25  entitled to reasonable attorneys' fees and costs of suit as provided by 29 U.S.C. § 2617(a)(3) and 29

26  C.F.R. § 825.400(c).

27  ///

28  ///

## SECOND CAUSE OF ACTION

### For Breach of Employment Contract to Pay Severance

### by Plaintiff Against Defendant PALOMAR and DOES 1-5 and 10-20, Inclusive

38.     Plaintiff hereby realleges and incorporates by reference herein each and every preceding paragraph of this Complaint.

39.     Plaintiff worked for Defendant PALOMAR for over ten (10) years.

40.     During the entire course of Plaintiff's employment with Defendant PALOMAR, there existed an express and/or implied-in-fact employment contract between Plaintiff and Defendant PALOMAR which included a "Severance Pay" policy.

41.     As the facts disclose, Plaintiff was entitled to at least 10 weeks of severance pay upon his termination (roughly $18,340.38, as noted above), based on the terms of Defendant PALOMAR's "Severance Pay" policy.  To date, Defendant PALOMAR has willfully failed to pay Plaintiff these severance wages owed to him.

42.     In addition to these severance wages, Defendants' "Severance Pay" policy also states that Plaintiff would be entitled to one-month of COBRA subsidy, which, as the facts disclose, is equivalent to roughly $1,100.  To date, Defendant PALOMAR has willfully failed to pay Plaintiff the value of this subsidy owed to him.

43.     Plaintiff is excused from presenting a written claim for damages to Defendant PALOMAR under the California Government Claims Act, Government Code § 910, *et seq.*, to the extent that such was required, as the required statement on file for PALOMAR in the roster maintained by the Secretary of State and county clerk failed to substantially conform with statutory requirements governing accuracy and completeness pursuant to Government Code § 946.4(a)(2).  If a local public agency fails to substantially comply with roster requirements, a plaintiff is completely excused from complying with claims presentation requirements before suing that agency. *Wilson v. San Francisco Redev. Agency*, 19 Cal.3d 555, 560 (1977).

44.     As a result of Defendants' breach of contract against Plaintiff, Plaintiff has suffered and continues to suffer substantial losses in earnings, bonuses, deferred compensation, and other employment benefits, all to his damage in an amount according to proof.

HONG & KASED LLP
5670 WILSHIRE BOULEVARD, SUITE 1800
LOS ANGELES, CALIFORNIA 90036
P: 213.222.6560
F: 213.985.1545

# THIRD CAUSE OF ACTION

## For Failure to Pay Earned Wages

## (Cal. Labor Code Section 201)

## by Plaintiff Against Defendant PALOMAR and DOES 1-5 and 15-25,

## Inclusive

45.     Plaintiff incorporates by reference and realleges paragraphs 1 through 18, inclusive, as though set forth fully herein.

46.     Defendants failed to pay Plaintiff the severance wages that he earned, as required by the California Labor Code.

47.     Plaintiff has been deprived of his rightfully earned wages as a direct and proximate result of Defendants' failure to pay said compensation. Plaintiff is entitled to recover such amounts, plus interest thereon, attorney's fees and costs.

48.     Plaintiff is excused from presenting a written claim for damages to Defendant PALOMAR under the California Government Claims Act, Government Code § 910, et seq., to the extent that such was required, as the required statement on file for PALOMAR in the roster maintained by the Secretary of State and county clerk failed to substantially conform with statutory requirements governing accuracy and completeness pursuant to Government Code § 946.4(a)(2). If a local public agency fails to substantially comply with roster requirements, a plaintiff is completely excused from complying with claims presentation requirements before suing that agency. *Wilson v. San Francisco Redev. Agency*, 19 Cal.3d 555, 560 (1977).

49.     As a result of Defendants' violation of Plaintiff's rights as alleged herein, Plaintiff is entitled to reasonable attorneys' fees and costs of suit as provided by Labor Code Section 218.5.

///

///

///

///

///

///

COMPLAINT

HONG & KASED LLP
5670 WILSHIRE BOULEVARD, SUITE 1800
LOS ANGELES, CALIFORNIA 90036
P: 213.222.6560
F: 213.985.1545

# FOURTH CAUSE OF ACTION

## For Waiting Time Penalties

### (Cal. Labor Code Section 203)

**by Plaintiff Against Defendant PALOMAR and DOES 1-5 and 20-30, Inclusive**

50.     Plaintiff hereby realleges and incorporates by reference herein each and every preceding paragraph of this Complaint.

51.     Defendants willfully failed to pay Plaintiff accrued PTO wages and severance wages due to him promptly upon separation, as required by Labor Code § 201.  The accrued PTO wages were paid a full seventeen (17) days late to Plaintiff.  Plaintiff has yet to receive the severance wages owed to him, despite the April 16, 2013 pre-litigation demand letter he sent to PALOMAR.

52.     Plaintiff is excused from presenting a written claim for damages to Defendant PALOMAR under the California Government Claims Act, Government Code § 910, et seq., to the extent that such was required, as the required statement on file for PALOMAR in the roster maintained by the Secretary of State and county clerk failed to substantially conform with statutory requirements governing accuracy and completeness pursuant to Government Code § 946.4(a)(2).  If a local public agency fails to substantially comply with roster requirements, a plaintiff is completely excused from complying with claims presentation requirements before suing that agency. *Wilson v. San Francisco Redev. Agency*, 19 Cal.3d 555, 560 (1977).

53.     Based on Defendants' conduct as alleged herein, Defendants are liable for statutory penalties pursuant to California Labor Code § 203.

# FIFTH CAUSE OF ACTION

## For Unfair Competition

### (Cal. Business & Professions Code Section 17200, *et seq.*)

**by Plaintiff Against Defendants PALOMAR and DOES 1-5 and 25-35, Inclusive**

54.     Plaintiff hereby realleges and incorporates by reference herein each and every preceding paragraph of this Complaint.

55.     Defendants' violations of the Code, including Defendants' failure to timely pay Plaintiff his earned PTO wages and failure to pay Plaintiff his severance wages due to him,

constitute unfair business practices in violation of California's Unfair Competition Law (the "UCL").

56.     Plaintiff has suffered injury in fact and has lost money or property as a result of Defendants' unfair business practices, and Defendants have reaped unfair benefits and illegal profits at Plaintiff's expense.

57.     Plaintiff is entitled to immediate possession of all amounts owed to him by Defendants, with interest.  Before he filed this action, Plaintiff wrote a pre-litigation demand to PALOMAR, dated April 16, 2013.  In the demand, Plaintiff detailed his claims, demanded payment for the amounts owed to him, and offered to discuss a pre-litigation resolution of this matter.  By way of its counsel, PALOMAR responded in a letter dated May 2, 2013, rejecting resolution to Plaintiff's claims.

58.     Plaintiff is excused from presenting a written claim for damages to Defendant PALOMAR under the California Government Claims Act, Government Code § 910, et seq., to the extent that such was required, as the required statement on file for PALOMAR in the roster maintained by the Secretary of State and county clerk failed to substantially conform with statutory requirements governing accuracy and completeness pursuant to Government Code § 946.4(a)(2).  If a local public agency fails to substantially comply with roster requirements, a plaintiff is completely excused from complying with claims presentation requirements before suing that agency. *Wilson v. San Francisco Redev. Agency*, 19 Cal.3d 555, 560 (1977)

59.     Defendants' unfair business practices entitle Plaintiff to seek preliminary and permanent injunctive relief, including but not limited to orders that Defendants account for, disgorge, and restore to Plaintiff the compensation unlawfully withheld from him.

WHEREFORE, Plaintiff hereby prays that the Court enter judgment in his favor and against Defendants PALOMAR HEALTH, a purported California Healthcare District; PAT DILLON, an individual; CRAIG PARRISH, an individual; JUDITH MANDEVILLE, an individual; and DOES 1-35, inclusive, and each of them, as follows:

1.     For unpaid wages in the amount of $18,340.38 from Defendant PALOMAR;

2.     For Labor Code Section 203 penalties in an amount not less than $11,004.23 from

HONG & KASED LLP
5670 WILSHIRE BOULEVARD, SUITE 1800
LOS ANGELES, CALIFORNIA 90036
P: 213.222.6560
F: 213.985.1545

1    Defendant PALOMAR;

2    3.    For prejudgment interest on the foregoing at the legal rate;

3    4.    For reasonable attorney fees and costs on Plaintiff's First Cause of Action, pursuant to

4          29 U.S.C. § 2617(a)(3) and 29 C.F.R. § 825.400(c) and Third Cause of Action,

5          pursuant to Labor Code Section 218.5;

6    5.    For economic damages pursuant to 29 U.S.C. § 2617(a)(1)(A)(i)(l);

7    6.    For liquidated damages pursuant to 29 U.S.C. § 2617(a)(1)(A)(iii);

8    7.    For equitable remedies (i.e., reinstatement and front pay) pursuant to 29 U.S.C. §

9          2617(a)(1)(B);

10   8.    For costs of suit incurred herein;

11   9.    For injunctive relief from Defendant PALOMAR's unfair business practices;

12   10.   For damages from Defendant PALOMAR's breach of contract;

13   11.   For such further relief as the Court may deem appropriate

14   Plaintiff hereby demands jury trial of this matter.

15   Dated: May 9, 2013

16

17                      HONG & KASED LLP

18            By: _____

19                      Nathan N. Kased
                        Attorneys for Plaintiff
20                      KENNETH BOONE

21

22

23

24

25

26

27

28

COMPLAINT

Exhibit "A"



January 20, 2011

Kenneth Boone
210 South Ivory Avenue
El Cajon, CA 92019

Dear Kenneth Boone:

As you are aware, you have been on a medical leave of absence since October 27, 2010. This time includes the Family Medical Leave Act (FMLA) governed leave, which runs concurrent with other types of leave, if applicable. The FMLA procedure allows up to 12 weeks of job protected leave of absence in a rolling calendar year. I must inform you that the FMLA portion (job protected) of your leave was exhausted on January 19, 2011 and for business/operational reasons, we are unable to hold your position until your anticipated return date.

Under the PPH Personal/Medical Leave of Absence procedure an additional 90 days of leave may be extended if medically necessary. This additional leave will expire April 25, 2011. This leave must be certified as medically necessary and your medical certification is current through January 27, 2011. Combined leaves of absence generally may not exceed six months, except as required by applicable law.

Should you be released by your physician to return to work before all available leave is exhausted, you will be eligible to apply for a transfer to any posted position for which you are qualified by education and experience. If you are transferred to such a position, your employment will be reinstated without loss of years of service.

If you have questions regarding this letter or any other issue regarding your leave of absence, please give me a call at (760)740-6338.

Sincerely,

Judith Mandeville
LOA Coordinator
Human Resources

cc: Department Supervisor

Exhibit "B"



PALOMAR
POMERADO
HEALTH

May 10, 2011

VIA REGULAR MAIL AND CERTIFIED MAIL RECEIPT NUMBER 3955 7149

Kenneth Boone
210 South Ivory Avenue
El Cajon, CA 92019

Re: Your employment status

Dear Kenneth Boone:

According to our records you have been on leave of absence since October 27, 2010. I must inform you that as of April 25, 2011 all leave of absence available to you under PPH procedures is exhausted. This time includes the 12 weeks PPH allows in compliance with the Family Medical Leave Act, if applicable. Consequently, your employment with PPH will end as of today. You will be mailed information and forms to access any funds you may be eligible for in the Pension or Deferred Compensation Plan. If you have accrued unpaid PTO, arrears for past premiums that are owed to PPH will be taken and you will receive a check for the balance of those hours, if any. During your employment, PPH provided for you basic Long Term Disability Insurance. A Long Term Disability claim has been initiated on your behalf. To determine if you are eligible for benefits under this plan, please contact Lincoln Financial Group at (800)423-2765.

We are sorry that your disability prevents you from returning to PPH. Your employment separation is not related to your performance. Rather, it is simply a routine process for employees who are not able to return to work following their leave of absence. If you should get a release from your physician to return to work, with or without accommodation, within 120 days of termination, you may be considered for any position for which you apply and are qualified, and your employment may be reinstated without loss of seniority with a waiver of your benefit waiting period.

We appreciate your service with Palomar Pomerado Health and wish you well. Should you have any questions regarding your benefits at termination, please call Judith Mandeville at (760)740-6338 or contact me at (760)740-6388.

Sincerely,

Michael Shea
Michael Shea
Director Compensation and Benefits

CC: Department Director

Exhibit "C"



**PALOMAR POMERADO HEALTH**
*A California Health Care District*
2227 Enterprise Street, Attn: Payroll
Escondido, CA 92029

**Bank of America**
San Diego Commercial Building #1450
450 "B" Street
San Diego, CA 92101
90-4182/1211

Advice No. 02536413

Date 5/27/2011

PAY    *VOID VOID VOID VOID VOID VOID VOID VOID*

$ *****9,806.22

DIRECT DEPOSIT ADVICE

Proc. Level: 10    Dept. Code: 8480

TO THE ORDER OF    **Kenneth D Boone**

## NON-NEGOTIABLE

**PALOMAR POMERADO HEALTH**
*A California Health Care District*

Advice No.: 02536413
Date: 05/27/11

| EMPLOYEE NAME | | | | | EMP. NO. | PROC. LVL. | DEPT. | PER. END |
|---|---|---|---|---|---|---|---|---|
| Boone, Kenneth D. | | | | | 000015544 | 10 | 8480 | 05/21/11 |
| TAX INFORMATION | | | | FED TAX STATUS | FED EXEMPT | CA ST TAX STATUS | | CA EXEMPT |
| | | | | Married | 01 | Single | | 01 |

**EARNINGS**

| DESCRIPTION | HOURS | RATE | CURRENT | YEAR TO DATE |
|---|---|---|---|---|
| PTO-Poff | 344.45 | | 15333.30 | 18296.69 |
| Regular | | | | 712.24 |
| Exc Life | | | | 110.89 |
| | | | | |
| **Gross Pay** | | | 15333.30 | 19119.82 |
| **Taxable Gross** | | | 15333.30 | 18716.45 |
| **Deductions** | | | 5527.08 | 7847.20 |
| **Net Pay** | | | 9806.22 | 11161.73 |

**TAXES/DEDUCTIONS**

| DESCRIPTION | CURRENT | YEAR TO DATE |
|---|---|---|
| FIT | 3138.45 | 3754.68 |
| FICA | 644.00 | 789.18 |
| MED | 222.33 | 272.45 |
| SIT-CA | 1338.30 | 1471.26 |
| SDICA | 184.00 | 224.15 |
| FID DC% | | 73.51 |
| HMO | | 300.42 |
| Vision | | 2.56 |
| Dental | | 26.88 |
| SUP LIFE | | 583.73 |
| SP LIFE | | 348.38 |

| DIRECT DEPOSIT INFORMATION | | TIME ACCRUAL | |
|---|---|---|---|
| ACCT. NO. | AMOUNT | TYPE | BALANCE |
| xxxxxx6897 | $9,206.22 | PTO Bal | -344.38 |
| xxxxx9626 | $600.00 | | |

Msg: adj: ppo incl acrl less accrued ben ded ppe5/21/11

Exhibit "D"

PALOMAR Palomar Pomerado Health
POMERADO
H E A L T H Human Resources

SPECIALIZING IN YOU Applicable to:

Severance Pay

3655

Affected Departments:

Procedure

(Rev. 5)Official

## I. PURPOSE:

To describe severance benefits.

## II. DEFINITIONS:

The terms "full time," "part time," "casual," "per diem," and "temporary"shall have the same meaning as defined in Human Resources Procedure #2547,"Hours Worked and Employee Status."

## III. TEXT / STANDARDS OF PRACTICE:

A. Except for those parts of this procedure pertaining to the President/CEO's benefits, all questions regarding coverage, entitlement, scope of benefits and interpretation of this procedure shall be resolved in the first instance by the President/CEO in his/her sole discretion. Final interpretation authority is reserved to the Board of Directors, whose decisions in this regard shall be final and binding. PPH may terminate this severance pay procedure at any time and, if this procedure is terminated, no employee other than those who have already terminated will be entitled to any benefits under this procedure.

B. This procedure applies to all full and part time PPH employees (hereinafter referred to as "Employees"). Casual, per diem and temporary employees are not eligible for severance benefits under this procedure.

C. Employees covered by a Collective Bargaining Agreement are excluded from this Procedure and any severance benefits will be determined by those Agreements.

D. If PPH terminates employment without cause, it will pay the employee the benefits set forth in Section D as severance benefits.

1. Said benefits will be subject to applicable withholding taxes.

2. No severance benefits will be provided as a result of an employee's death, disability, voluntary resignation, or termination for cause, as defined in Section E.8 below.

E. The applicable amount of severance benefits will be determined according to the employee's position as follows:

1. The President/CEO, Administrators/COO's and Officers will have their severance benefits established in individual written employment agreements entered into between them and the Health System: the employees specified in this Section E.1 have no rights to severance benefits under this procedure. The Board will negotiate the President/CEO's employment agreement and the President/CEO will negotiate agreements with the Officers of the organization at levels approved by the Board of Directors.

2. Officers shall generally receive the following severance benefits:

a. An amount equal to twelve (12) months salary as severance pay.

b. PPH will subsidize the cost of the Officer's COBRA health care continuation coverage for twelve (12) months. The Officer will be responsible for the portion of the health insurance coverage consistent with other PPH employees.

3. The positions of Compliance Officer and Internal Auditor shall receive the following severance benefits:

a. An amount equal to twelve (12) months salary as severance pay

b. PPH will subsidize the cost of the Compliance Officer's and Internal Auditor's COBRA health care continuation of coverage for twelve (12) months. The Compliance Officer and Internal Auditor will be responsible for the portion of health insurance coverage consistent with other PPH employees.

4. The positions of Corporate Controller and Associate Chief Nursing Officers shall receive the following severance benefits:

   a. An amount equal to nine (9) months' salary as severance pay.

   b. PPH will pay for the cost of the COBRA health care continuation coverage for nine (9) months. The Corporate Controller and Associate Chief Nursing Officers will be responsible for the portion of the health insurance coverage consistent with other PPH employees.

5. Employees with full responsibility for the operations of a department and/or a major function within PPH (hereinafter referred to as Department Directors) shall be entitled to the following severance benefits:

   a. An amount equal to six (6) months' salary as severance pay.

   b. PPH will pay for the cost of the COBRA health care continuation coverage for six (6) months. Department Directors will be responsible for the portion of the health insurance coverage consistent with other PPH employees.

6. Employees with the position title "Manager" shall be entitled to the following severance benefits:

   a. An amount equal to three 3 (3) months salary as severance pay.

   b. PPH will pay for the cost of the COBRA health care continuation coverage for three (3) months. Managers will be responsible for the portion of the health insurance coverage consistent with other PPH employees

7. All other eligible PPH employees will receive, as severance pay, an amount equal to one week's salary per year of service, up to a maximum of twelve (12) weeks.

   a. PPH will subsidize the cost of the COBRA health care continuation coverage for one (1) month.

8. PPH has the right to terminate employees with or without cause and this procedure sets out an employee's exclusive and sole right to compensation from PPH if such employee is terminated without cause.

9. For purposes of this severance pay procedure, "cause" shall mean serious misconduct, such as fraud, embezzlement, misappropriation of PPH property or undue use of influence as a PPH official, criminal activities, whether or not prosecution or conviction occurs, the employee's repeated failure to perform the essential functions of his/her job in a satisfactory fashion, and use of illegal drugs or abuse of legal drugs, including alcohol, after a prior warning concerning such drug or abuse.

10. *For non-exempt employees, a "week's salary" means an amount equal to the employee's final hourly rate multiplied by the number of hours the employee was regularly scheduled to work each week at the time of his/her termination from employment with PPH. For exempt employees, "one week's salary" is an amount equal to the product of the employee's final hourly rate multiplied by the lesser of 40 or the number of hours the employee was regularly scheduled to work each week at the time of his/her termination. This amount will be rounded up to the nearest hundred.*

11. The term "regularly scheduled" will mean the actual average number of hours the employee worked over the last six-month period, but does not inclue overtime or any other non-salary payments.

12. An employee's benefits under this procedure will be calculated from the employee's most recent date of hire or re-hire, as applicable, for the most current position they occupy without regard to any prior service with PPH before the most recent date of hire or re-hire, as applicable.

    a. No years of service will be credited in any part of a year of service (any 12-month continuous period from the original date of hire) of which the employee was working in a per diem, casual or temporary classification.

13. To receive severance pay, the employee must sign a general release prepared by PPH waiving all claims against PPH.

IV. **ADDENDUM:**

**Signed by** ( 05/24/2010 ) Brenda Turner, Chief Human Resources Officer

**Effective** 05/24/2010

**Document Owner** Turner, Brenda

*Paper copies of this document may not be current and should not be relied on for official purposes. The current version is in Lucidoc at .*