1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT
9                  SOUTHERN DISTRICT OF CALIFORNIA
10

11   KENNETH BOONE, an Individual,          Case No.:  13cv1745 JLS (KSC)

12                            Plaintiff,    **ORDER GRANTING DEFENDANTS'**
                                            **MOTION FOR SUMMARY**
13   v.                                     **JUDGMENT**

14   PALOMAR HEALTH, a purported
     California Health Care District; PAT
15   DILLON, an Individual; CRAIG           (ECF Nos. 34, 37, 38, 43, & 45)
     PARRISH, an Individual; JUDITH
16   MANDEVILLE, an Individual; and
     DOES 1-35, Inclusive,
17
                            Defendant.
18
19
20

21          Presently before the Court is defendants Palomar Health, Pat Dillon, and Craig

22   Parrish's (Defendants) Motion for Summary Judgment or in the Alternative Partial

23   Summary Judgment (Motion).  (ECF No. 34.)  Also before the Court are plaintiff Kenneth

24   Boone's Opposition to Defendants' Motion for Summary Judgment, or, Alternatively,

25   Partial Summary Judgment (Opposition), (ECF No. 37); Defendants' Reply in Support of

26   Motion for Summary Judgment or in the Alternative Partial Summary Judgment (Reply),

27   (ECF No. 38); Plaintiff's E-Filing Re Deposition Testimony, (ECF No. 43); and

28   Defendants' Submission of Excerpts of Deposition Testimony of Kenneth Boone in

Support of Motion for Summary Judgment or, Alternatively, Partial Summary Judgment, (ECF No. 45).

Because Boone cannot identify any evidence tending to show that Defendants retaliated against him for taking Family Medical Leave Act (FMLA) leave or interfered with his leave rights, the Court **GRANTS** the Defendants' Motion.

## BACKGROUND

Plaintiff Kenneth Boone worked for health care district Palomar Health (Palomar) in various jobs for more than ten years, most recently in the information technology department as a Local Area Network Analyst, or LAN Analyst. (Am. Compl., ECF No. 6, at 3.) Boone reported to defendant Craig Parrish, who then reported to defendant Pat Dillon. (Mot., ECF No. 34-1, at 9.)

In 2010, the Palomar IT department was very busy developing a computer network for a new 740,000-square foot hospital in the health district. (Mot., ECF No. 34-1, at 9.) In August or September of 2010, officials in Palomar's IT department discussed changing the job title for Boone's position—there were three others in the district—from LAN Analyst to Systems Engineer/Data Base Administrator and reclassifying the position to better suit Palomar's needs. (Mot., ECF No. 34-1, at 9–10.) Parrish discussed this change with Boone in September 2010.[1]  (Boone Dep., Def. Ex. 2, ECF No. 34-9, at 36.)

---

[1] The exchange on this topic at Boone's deposition went as follows:
> Q. Okay. So your memory of the communication with Craig Parrish regarding redefining some of the positions in IT as of September 2010 was to create a position along the lines of system engineer, database administrator that would cover, not only LAN analysts, but also database analysts?
> [Boone] A. Yeah.
> Q. Okay. So it would be a group of people who were cross-trained both in the area of LAN analyst, but also database analyst; is that correct?
> [Boone] A. I believe that was the intent, to have more of a generalist approach to it, have them—have everybody be able to do all things. That was—I believe was his intent.
> Q. Okay. And this was discussed, you recall, in September of 2010, correct?
> [Boone] A. Once—I would say yes, it was a preliminary discussion of it.

(*Id.*)

Under the significant workload in the Palomar IT department, Boone was overcome with stress, suffered from depression, and on October 26, 2010, attempted suicide.[2]  (*Id.* at 4.)  Following this incident, Boone's doctor placed him on disability.  (*Id.*)  Boone notified Palomar human resources representative Judith Marshall—formerly Judith Mandeville— that he wished to take twelve weeks of leave under the FMLA.  (*Id.*)  The FMLA leave was scheduled to last twelve weeks, from October 28, 2010, until January 19, 2011.  (*Id.*)

On January 18, 2011, the day before Boone's FMLA leave ended, Boone's supervisor Parrish asked Marshall in human resources about Mr. Boone's status.  (Mot., ECF No. 34-1, at 11.)  Parrish sent Marshall the following message:

> Hi Judith,
> As I understand it, Ken Boone is on approved medical leave until 1/27/11. Is this correct and still current? We have not heard from Ken [Boone] in months and at this point I wanted to understand what our process is so we can be prepared to move forward and post the position should he not report to work at the completion of his leave.
> Can you help direct me through the process?
> Thanks,
> Craig [Parrish]

(Pl. Ex. 4, ECF No. 37-8, at 2.)  Parrish later wrote to Marshall that the IT department was understaffed with Boone on leave, and needed an employee to perform his duties.

On January 19, 2011, the day his FMLA leave ended, Boone notified Marshall that his physician, Dr. Jim Turnage, had extended his disability leave through April 26, 2011.[3]  (Mot., ECF No. 34-1, at 11.)  Because Boone's twelve weeks of FMLA leave ended that day, Palomar placed Boone on its supplemental leave policy, which allowed him another ninety days of leave, lasting through April 26, 2011.  (Mot., ECF No. 34-1, at 11, 13.)

---

[2] Boone argues in his Opposition that his supervisors, defendants in this case, caused the stress that led him to attempt suicide.  (Opp'n, ECF No. 37, at 5.)  Although these facts may be relevant to other claims, they are not directly relevant to Boone's FMLA claim, which is currently at issue.

[3] Boone later stated in his deposition that when his FMLA leave period ended on January 19, 2011, he was still disabled and could not return to work.  (Boone Dep., Def. Ex. 2, ECF No. 34-9, at 10, 38–39.)

13cv1745 JLS (KSC)

Sometime in the next few days, Boone met with Parrish—on January 20, 2011, according to Boone, (Opp'n, ECF No. 37, at 7), or January 24, 2011, according to the Defendants, (Mot., ECF No. 34-1, at 12). At that meeting, Parrish told Boone that his position would be posted under the new job title Systems/Engineer/Data Base Administrator, but that Boone could pursue that position when he returned to work.[4] (Mot., ECF No. 34-1, at 12.) Boone says this position required higher qualifications than he possessed, (Boone Decl., ECF No. 37-2, at 3), although Dillon says he considered Boone qualified for that role and that Boone would have been allowed to return as a Systems Engineer/Data Base Administrator, (Dillon Decl., ECF No. 34-3, at 3). Boone emphasizes that at this meeting, he expressed his desire and eagerness to return to work; however, he did not actually request reinstatement, nor had his doctor cleared him to return to work. (Boone Depo., ECF No. 43-3, at 48–49; Pl. Supp'l Brf., ECF No. 43, at 1–4.)

On the morning of February 1, 2011, Boone sent Marshall an email asking about his employment status and the state of his benefits. (Def. Ex. 7, ECF No. 34-14, at 2.) Marshall responded the same afternoon that Boone was still an employee; that Palomar would continue to pay the full premiums on his benefits, including medical, dental, and vision; and that if he was cleared to resume work before his leave was exhausted, he would be able to apply for any posted position as an "Internal Applicant." (Def. Ex. 7, ECF No. 34-14, at 2.) In other words, Boone was a Palomar employee with health benefits but no job.

Palomar posted two positions for Systems Engineer/Data Base Administrator in February 2011,[5] (Mot., ECF No. 34-1, at 12), and filled both positions in the following months, (Parrish Dep., ECF No. 34-10, at 25).

---

[4] Boone characterizes that meeting as coming "back to work" to meet with Parrish, and argues that there is, therefore, a dispute of fact as to whether Boone returned to work on January 20, 2015 seeking reinstatement. (Opp'n, ECF No. 37, at 7.)

[5] According to the Defendants, "[n]either Dillon[] nor Parrish had any involvement in preparing the job posting," (Mot., ECF No. 34-1, at 12), to which both Dillon and Parrish swear in declarations, (Dillon Decl., ¶6, ECF No. 34-3, at 2–3; Parrish Decl., ¶ 12, ECF No. 34-3, at 4.)

Months later, on April 18, 2011, Boone emailed Marshall stating that, "My disability to return to work still continues.  I suspect it will continue into May and beyond."  (Def. Ex. 15, ECF No. 34-22, at 12.)   He also asked when his last day as a Palomar employee would be.  (*Id.*)  Marshall responded that if his doctor did not clear him to return to work before April 27, 2011, the first day after his supplemental leave ended, he would be terminated, but that his employee file would include a "non-prejudicial code that simply indicated the employee was unable to return to work due to health reasons."  (Mot., ECF No. 34-1, at 13.)

Palomar notified Boone in a letter dated May 10, 2011, that he had exhausted both his twelve weeks of FMLA leave and his ninety days of supplemental leave, and, starting that day, he was no longer a Palomar employee.[6]  (Def. Ex. 18, ECF No. 34-25, at 2.)  The letter also told Boone, "If you should get a release from your physician to return to work, with or without accommodation, within 120 days of termination, you may be considered for any position for which you apply and are qualified, and your employment may be reinstated without loss of seniority . . . ."  (*Id.*)

Meanwhile, Boone had been pursuing long-term disability benefits.  In his February 1, 2011 email, Boone asked Marshall to send him the forms necessary to apply for long-term disability benefits under a Palomar program administered by Lincoln Financial Group.  (Def. Ex. 15, ECF No. 34-22, at 3.)  Boone received these benefits from April 2011 to April 2013.  (Boone Dep., ECF No. 34-9, at 6–7, 25–26.)

According to Dr. Turnage, Boone never recovered from his disability, and therefore was never able to return to work.  (Turnage Dep., Def. Ex. 19, ECF No. 34-26, at 5–6.)  As of his February 16, 2015 deposition, Boone said he remained disabled and was receiving social security disability benefits.  (Boone Dep., Def. Ex. 2, ECF No. 34-9, at 6–7, 25–26.)  At tension with these statements, Boone now says in a declaration attached to his

---

[6] Marshall states in a declaration that she wrote the letter, which is signed by her supervisor Michael Shea, and that she did not discuss Boone's termination with Dillon or Parrish, and that neither had any involvement in that decision.  (Marshall Decl., ¶13, ECF No. 34-5, at 4.)

Opposition that he "had every intention of returning to [his] job of nearly ten years which meant the world to [him]," and that had his "position not been eliminated on January 20, 2011, [he] would have returned to work on or about that date." (Boone Decl., ECF No. 37-2, at 3.)

Boone filed his Amended Complaint on August 21, 2013, alleging that Palomar, Dillon, Parrish, and Marshall willfully violated the FMLA. (Am. Compl., ECF No. 6, at 5, 7.) The Court dismissed without prejudice Boone's claim against Marshall/Mandeville in its April 18, 2014 Order. (ECF No. 11.)

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), a party may move for summary judgment as to a claim or part of a claim. Summary judgment is appropriate on an element of a claim where the Court is satisfied that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* When the Court weighs the evidence to be presented by the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

The initial burden of establishing the absence of a genuine issue of material fact falls on the moving party. *Celotex*, 477 U.S. at 323. The moving party may meet this burden by identifying the "portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,'" that show an absence of dispute regarding a material fact. *Id.* When a Plaintiff seeks summary judgment as to an element for which it bears the burden of proof, "it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (quoting *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992)).

Once the moving party satisfies this initial burden, the nonmoving party must identify specific facts showing that there is a genuine dispute for trial. *Celotex*, 477 U.S. at 324. To do so, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, to survive summary judgment, the nonmoving party must "by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts'" that would allow a reasonable fact finder to return a verdict for the non-moving party. *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 248. The non-moving party cannot oppose a properly supported summary judgment motion by "rest[ing] on mere allegations or denials of his pleadings." *Anderson*, 477 U.S. at 256.

A party does not create a genuine dispute of material fact by simply submitting a declaration that contradicts other evidence in the record. *United States v. TRW Rifle*, 447 F.3d 686, 692 n.10 (9th Cir. 2006) ("[A party] cannot create a genuine issue of material fact by submitting a contradictory declaration, which appears to be offered to avoid summary judgment."); *Block v. City of L.A.*, 253 F.3d 410, 419 n. 2 (9th Cir.2001) ("A party cannot create a genuine issue of material fact to survive summary judgment by contradicting his earlier version of the facts."); *see also Thoroughman v. Savittieri*, 323 F. App'x 548, 550 (9th Cir. 2009) (unpublished disposition) (holding that a declaration that contradicted deposition testimony was insufficient to create a genuine dispute of material fact and, therefore, to thwart summary judgment).

## ANALYSIS

### I.  FMLA

The FMLA entitles employees who encounter certain family or health events, including "a serious health condition that makes the employee unable to perform the functions of the position," to twelve weeks of leave in a yearlong period. 29 U.S.C. § 2612(a)(1). Employees who take FMLA leave have the right to return to their position or an equivalent position at the conclusion of their leave. 29 U.S.C. § 2614(a)(1); *Xin Liu v.*

*Amway Corp.*, 347 F.3d 1125, 1132 (9th Cir. 2003). Employers are prohibited from interfering with the exercise of these rights or discriminating—including by discharging an employee—for exercising his or her FMLA rights. 29 U.S.C. § 2615. The FMLA gives employees a cause of action and provides remedies for employer violations. 29 U.S.C. §§ 2615 & 2617.

The Department of Labor, authorized by Congress, has issued implementing regulations for the FMLA. *Sanders v. City of Newport*, 657 F.3d 772, 779 n.5 (9th Cir. 2011) ("These regulations are entitled to deference."). One such regulation, 29 C.F.R. § 825.216(c), provides:

> If the employee is unable to perform an essential function of the position because of a physical or mental condition, including the continuation of a serious health condition or an injury or illness also covered by workers' compensation, the employee has no right to restoration to another position under the FMLA.

Similarly, taking FMLA leave does not provide protection or job security beyond what an employee would have if he or she had continued on the job as usual. 29 C.F.R. § 825.216 ("An employee has no greater right to reinstatement or to other benefits and conditions of employment than if the employee had been continuously employed during the FMLA leave period."); *see also Edgar v. JAC Products, Inc.*, 443 F.3d 501, 508 (6th Cir. 2006) ("[I]nterference with an employee's FMLA rights does not constitute a violation if the employer has a legitimate reason unrelated to the exercise of FMLA rights for engaging in the challenged conduct."). The employer bears the burden of proving the adverse employment action would have occurred regardless of the employee taking leave. 29 C.F.R. § 825.216.

Employees may bring two types of claims against employers under the FMLA: a discrimination/retaliation claim or an interference claim. *Sanders*, 657 F.3d at 777–78.

## II.   Defendants' Entitlement to Summary Judgment

The Defendants raise four arguments for complete summary judgment in their favor, and one argument for summary judgment with regard to defendants Parrish and Dillon.

Specifically, Defendants argue Boone can identify no evidence suggesting that (1) Defendants willfully violated the FMLA; (2) Defendants interfered with Boone's FMLA rights; (3) Defendants retaliated or discriminated against Boone because he took FMLA leave; (4) Boone was prejudiced by these violations; or (5) Parrish and Dillon are individually liable to Boone under his FMLA claim.

### A.    *"Willful" Violation*

Defendants argue that because Boone pleaded only willful violation of the FMLA, Boone must prove that the Defendants knew they were violating Boone's FMLA rights, or at least showed reckless disregard for that possibility.

Whether a violation of the FMLA was "willful" bears mainly on whether the statute of limitations is two or three years, with the longer period available for willful violations. *See Bass v. Potter*, 522 F.3d 1098, 1100 (10th Cir. 2008). However, Defendants do not argue in their Motion that Boone's claim is time-barred. Instead, they want to make him prove the higher mental state to hold Defendants liable.

Although Boone only lists one cause of action, "For Willful Violation of the Family Medical Leave Act of 1993," he pleads sufficient facts to give the Defendants notice of possible liability for a violation involving a lesser mental state. *See Am. Timber & Trading Co. v. First Nat. Bank of Oregon*, 690 F.2d 781, 786 (9th Cir. 1982) ("A party need not plead specific legal theories in the complaint, so long as the other side receives notice as to what is at issue in the case.").

Boone does not need to prove a willful violation of the FMLA simply because Boone uses the word "willful" in a heading in his complaint. In any event, as will be shown below, the question of willfulness is not necessary to resolve Defendants' Motion.

### B.    *Interference*

An employer is liable if it interferes with the employee's exercise of FMLA rights. *Sanders*, 657 F.3d at 777–78. Failure to reinstate is interference because reinstatement at the end of an FMLA leave period is the "linchpin" of an employee's FMLA rights." *Id.* at 778 ("[E]vidence that an employer failed to reinstate an employee who was out on FMLA

- 9 -

leave to her original (or an equivalent) position establishes a prima facie denial of the employee's FMLA rights."). In an interference claim, the employer's intent is irrelevant. *Id.*

When an employee sues an employer for interference, the employee must prove (1) he was eligible for FMLA protection, (2) his employer was covered by the FMLA, (3) he was entitled to FMLA leave, (4) he provided sufficient notice of his intent to take leave, and (5) his employer denied him FMLA benefits to which he was entitled. *Id.* (citing *Burnett v. LFW Inc.*, 472 F.3d 471, 477 (7th Cir.2006)). Only the fifth element is at issue here.

The employer has the burden of showing that it had a legitimate reason to deny an employee reinstatement. *Sanders*, 657 F.3d at 780. That assumes, however, the employee in fact sought reinstatement. *See id*; *see also Edgar*, 443 F.3d at 506–07 ("[A]n employer does not violate the FMLA when it fires an employee who is indisputably unable to return to work at the conclusion of the 12-week period of statutory leave.").

To be clear, the Defendants could not have fired Boone during his FMLA leave period based on his inability to work. One of the main purposes of the FMLA is to give employees a period of respite in which they can cope with and recover from their disabilities while still having a job to return to. But Congress set the leave period at twelve weeks, not twelve weeks and one day, so after his FMLA leave expired on January 19, 2011, Palomar Health was not obligated to offer Boone additional leave or continue to hold his position open for him to return at some time he would choose in the future.

Boone argues there is a genuine dispute of material fact over whether he sought reinstatement at the meeting with Parrish on January 20, 2011.[7] This dispute, if true, would

---

[7] In addition to the issue of whether Boone sought reinstatement at this meeting, Boone argues there is a dispute about whether the meeting occurred on January 20, 2011, or January 24, 2011. The Court does not need to reach the question of whether there is a genuine dispute of material fact over the date of the meeting because, even if it occurred on the 20th as Boone alleges, there is no genuine dispute about whether Boone sought reinstatement, as is discussed below.

be material because it would show that he sought and was denied reinstatement in violation of his FMLA rights.  The only question, therefore, is whether the dispute is genuine.

In his deposition, Boone said that when his leave ended on January 19, 2011, he was still disabled and could not return to work.  (Boone Dep., Def. Ex. 2, ECF No. 34-9, at 10, 38–39.)  Similarly, in his April 18, 2011 email to Marshall, sent several months after his FMLA leave had expired,  Boone stated that his "disability to return to work still continues," and that he "suspect[ed] it will continue into May and beyond."  (Def. Ex. 15, ECF No. 34-22, at 12.)  Dr. Turnage said in his deposition that Boone never recovered from his disability, and therefore was never able to return to work, including on January 20, 2011.[8]  (*See* Turnage Dep., Def. Ex. 19, ECF No. 34-26, at 5–6.)  Similarly, Boone said in his deposition on February 17, 2015, that he remained disabled to that day, and was receiving social security disability benefits as a result.  (Boone Dep., Def. Ex. 2, ECF No. 34-9, at 3–4, 6–7, 25.)

In his supplemental filing, Boone points to his subjective desire to return to work on January 20, 2011, arguing his statements in the record about this desire create a dispute of fact as to whether Boone sought reinstatement at the meeting.  (ECF No. 43, 1–3.)  Boone testified at his deposition that he told Parrish he wanted to return to work, but that Parrish then told him his position had been eliminated, a similar position had been posted but required qualifications Boone lacked, and Boone would have to apply for that position if he wished to return to work.  (ECF No. 43-3, at 48–49.)  Because this is the summary judgment stage, the Court takes all of Boone's deposition statements about the meeting as true.  Immediately after Boone testified about these circumstances in his deposition, he

---

[8] At oral argument on this Motion, Boone's counsel contended that Dr. Turnage was not qualified to render this opinion.  Counsel's attack on his client's physician is misplaced, however, because what matters is not whether Dr. Turnage was correct, but whether Boone informed the Defendants that he was not able to work based on his doctor's orders.  In other words, what matters is what effect Dr. Turnage's opinion had on Defendants' staffing decisions in January 2011, not whether Dr. Turnage was correct in his diagnosis of Boone's disability.  Counsel's statement that another expert would testify that Boone could have returned to work is, therefore, immaterial.

went on to say that his doctor had not cleared him to work as of this meeting, that he did not consider himself capable of returning to work at that time, and that he told Parrish at or before the meeting that he would need at least another eight weeks of additional leave from that date.  (*Id.* at 49–50.)[9]

Although courts must consider the evidence in the light most favorable to the non-moving party at the summary judgment stage, courts are not required to isolate excerpts of evidence without considering their context.  It may be possible, viewing only the excerpt of the deposition that Boone cites in his supplemental briefing, to imagine that Boone was about to ask Parrish for immediate reinstatement, but Parrish shut him down before he could actually ask, perhaps implicitly denying Boone reinstatement even though he never explicitly requested it.   But the context of the excerpts upon which Boone relies—specifically Boone's immediately subsequent statement that he was still disabled at the meeting—show that when he spoke of being excited to return to work, he did not mean that he was actually ready and able to return.   Although Boone may have subjectively desired to return to work at some point, he <u>does not say</u> in his deposition that he sought reinstatement, but he <u>does say</u> in his deposition that he was still disabled on the date of the meeting with Parrish, suggesting he was not actually seeking reinstatement that day.  (*Id.*)

The only evidence actually showing that Boone attempted to return to work on January 20, 2011, is Boone's statement in a declaration attached to his Opposition: "Had my position not been eliminated on January 20, 2011, I would have returned to work on or about that date."  (Boone Decl., ECF No. 37-2, at 3.)   This contradictory declaration is insufficient to create a genuine dispute of material fact.  *United States v. TRW Rifle*, 447

---

[9] The exact statement was:

> No. I do recall at the meeting I did bring up to him that my doctor had not released me to work at that point in time because my doctor didn't think I was—he didn't think I was ready for it because I was still suffering from mental problems such that I was not capable of returning to work at that point in time. And I believe he told me right before I saw Parrish, sometime before I saw Parrish, that I probably would need another eight weeks off. So I expressed that to Parrish, also, at that point in time.

(Boone Dep., ECF No. 43-3, at 49–50.)

1   F.3d 686, 692 n.10 (9th Cir. 2006) ("[A party] cannot create a genuine issue of material
2   fact by submitting a contradictory declaration, which appears to be offered to avoid
3   summary judgment.").

4       There is, therefore, no <u>genuine</u> dispute about whether Boone sought reinstatement
5   (he did not) or was still disabled at the end of his twelve weeks of FMLA leave (he was).

6   ### C.   *Discrimination/Retaliation*

7       An employer is liable for discrimination/retaliation if it considers the employee's
8   use of FMLA leave as "a factor in the decision to terminate" the employee. *Sanders*, 657
9   F.3d at 777; *Xin Liu*, 347 F.3d at 1135. The employee must prove by a preponderance of
10  the evidence, using circumstantial evidence, direct evidence, or both, that "taking of
11  FMLA-protected leave constituted a negative factor in the decision to terminate" the
12  employee. *Xin Liu*, 347 F.3d at 1136 (citing 29 C.F.R. § 825.220(c)).

13      It is important to distinguish between terminating an employee <u>because he cannot</u>
14  <u>work</u> due to a disability and terminating an employee <u>because he took leave</u> under the
15  FMLA. In a case like this, both relate to the underlying disability. But terminating an
16  employee on the basis of his inability to do the job after the leave period expires—even if
17  the disability preventing the employee from working was the reason for FMLA leave in
18  the first place—is not the same as taking an adverse employment action against an
19  employee in retaliation for the employee's use of leave. To be "a negative factor" related
20  to taking leave, the evidence will typically show some amount of animus by the employer
21  in response to the employee's FMLA leave. *See Xin Liu*, 347 F.3d at 1137.

22      For example, in *Xin Liu*, the employee/plaintiff identified evidence of her supervisor
23  making negative comments about the plaintiff's use of FMLA leave and the need to "pick
24  up the slack and do[] her job and [his] at the same time." 347 F.3d at 1130. Following her
25  leave, the plaintiff, who had always received excellent performance reviews, began
26  receiving negative reviews from that same supervisor, and on that basis was selected to be
27  laid off when her department underwent downsizing. *Id.* at 1131. The Ninth Circuit looked
28  to evidence suggesting "the evaluation may have been tainted with [the supervisor's]

attitude towards [plaintiff's] leave," combined with the closeness in time between her leave and her termination, in holding that there was a triable issue of material fact as to whether the plaintiff's leave was a negative factor in her termination. *Id.* at 1137.  Notably, the plaintiff's reason for taking leave did not prevent her from returning to work altogether. *See id.*

In arguing for summary judgment on Boone's retaliation claim, Defendants point to the absence of evidence tending to demonstrate that FMLA leave was a negative factor in the decision to terminate Boone.[10]

### (i)    *The Email Chain*

In his attempt to refute this absence of evidence, Boone points to the email chain between his supervisor and the human resources department, arguing, "Their communications create a triable issue of fact as to whether the termination was indeed a negative consequence of the exercise of FMLA leave." (Opp'n, ECF No. 37, at 8.)  Boone is correct that "[t]his e-mail chain shows that the Defendants were discussing the elimination of Boone's position towards the expiration of the FMLA leave." (*Id.* at 9.)  However, planning to meet staffing needs based on information suggesting an employee will not report to work when his FMLA leave expires does not violate the FMLA.

Boone points to Parrish's statement that he wanted to know what Palomar's "process" was "so we can be prepared to move forward and post the position should he not report to work at the completion of his leave." (Opp'n, EF No. 37, at 8.)  Boone argues that this communication "is strong circumstantial evidence that the FMLA was violated," emphasizing the phrase, "so we can be prepared to move forward." (*Id.* at 5.)  Viewing this part of Parrish's statement in isolation, one could infer, first, that Parrish is talking about firing Boone rather than simply meeting staffing needs.  One could then make a

---

[10] The retaliation analysis in this case is complicated slightly by the fact that Boone was notified that his position had been eliminated at the meeting in January 2011, but that he technically remained an employee under Palomar's extended leave policy until May 10, 2011.  Thus, for nearly four months, Boone was a Palomar employee without a job, and was simultaneously disabled and unable to work.

second inference that the planned firing is to get back at Boone for taking FMLA leave. But nothing about the email actually nudges the reader toward those inferences, so the possibility of drawing those conclusions from the email is the kind of "scintilla" of evidence the *Anderson* court said is not enough to create a genuine dispute of fact. *See Anderson*, 477 U.S. at 252 (1986) ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient [to defeat summary judgment].").

The most significant part of the communication comes later in the same sentence. It states, "should he not report to work at the completion of his leave." Implicit in this statement is that Boone could have reported to work when his FMLA leave expired and would have been reinstated. In that case, his position would not have been posted. Thus, this email shows Boone's supervisor coordinating with Palomar HR to staff his department, not animus toward Boone because of his leave or an intent to retaliate against Boone because he took leave.

After Boone made clear that he would not be returning to work at the end of his FMLA leave, Parrish informed Boone that Palomar was going to post his position. Assuming, despite the fact that he was kept on staff even though he could not work, that this was an adverse employment action, the evidence does not suggest retaliation for Boone's leave, but a response to Boone's inability to perform his job and the IT department's need for additional staffing.

Running against the retaliation theory, Palomar granted Boone ninety days of additional leave—leave not required by the FMLA—and kept him on as an employee, continuing to pay for his medical benefits for several more months. It was not until May that Palomar formally ended its employment relationship with Boone, but once again, the circumstances suggest only that Palomar wished to employ individuals capable of working, of which Boone was not.

(ii)   *The Timing of Boone's Termination*

With no record evidence to create a genuine dispute on his retaliation claim, Boone falls back to this Court's dismissal order, in particular, the premise that "The timing of

Palomar's negative employment decision, apparently just one day after the exhaustion of Plaintiff's FMLA-protected leave, constitutes fairly strong circumstantial evidence that Palomar impermissibly penalized Plaintiff for taking such leave." (Order, ECF No. 11, at 10 (*citing Xin Liu v. Amway Corp.* 347 F.3d 1125, 1137 (9th Cir. 2003); *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir. 2002); *Schultz v. Wells Fargo Bank, N.A.*, Case No. 3:11-cv-1467-SI, 2013 WL 4782157, at *10 (D. Or. Sept. 5, 2013)).)

Undoubtedly, timing of an adverse employment action can support such an inference, but in light of evidence produced in discovery clarifying and contextualizing the changes to Boone's employment status, Boone's reliance on this Court's order at the dismissal stage is misplaced. At that point, the Court assumed the truth of the allegations in Boone's complaint. Now this case is at the summary judgment stage, and the Court no longer simply takes the plaintiff's pleaded facts as true. Instead, the plaintiff is now required to point to some piece of evidence tending to prove the facts he alleges, which Boone has not done.

At the dismissal stage, the timing of those incidents, without other evidence providing context, was susceptible to an inference that posting Boone's job was retaliatory, and was therefore sufficient to allow this case to proceed to discovery. But discovery has yielded no evidence bearing out Boone's theory that his FMLA leave was a factor in the Defendants' decision to eliminate his position. To the contrary, the evidence renders the timing benign, showing that, if Boone were capable of working, Palomar was ready for him to resume his job and assume the new job title.

It is true that the court in *Xin Liu* held the close proximity of the plaintiff's FMLA leave to her firing created a dispute of fact with regard to whether the firing was retaliatory. 347 F.3d at 1137. But that does not mean a court could never grant summary judgment when an employee was fired fairly soon after taking leave. In *Xin Liu*, there was other evidence that suggested animus related to the FMLA leave—of which there is none in this case—and, more importantly, the plaintiff had returned to work and was doing her job. *See id.* Boone's inability to work may, on its own, thwart an FMLA retaliation claim, but even

- 16 -

1   if it does not, the proximity of these employment decisions set in the context of the other
2   evidence that has come to light in this case does not support an inference that the
3   Defendants were retaliating against Boone for taking leave.  The timing alone, therefore,
4   does not create a genuine dispute of material fact on that point.

5          Further, the evidence also suggests that the title change and job reclassification had
6   been planned since before Boone even took leave, and was not a pretextual scheme to leave
7   Boone without a job without officially firing him, much less that the job reclassification
8   was a retaliatory response to his leave.  And far from the animus apparent in *Xin Liu*,
9   Palomar kept Boone on staff with benefits, with the opportunity to retain his seniority status
10  and participate in the internal applicant system.  Boone simply never applied for any job
11  or tried to be reinstated.

12                  (iii)   *Conclusion*

13         Because Boone cannot point to any evidence to support the theory that Defendants
14  fired him in retaliation for his use of FMLA leave, there is no genuine dispute of material
15  fact about whether the Defendants' actions were retaliatory, and the Defendants are
16  therefore entitled to summary judgment on Boone's discrimination/retaliation claim.

17      **D.    *Lack of Prejudice***

18         To prevail on an FMLA claim, the plaintiff must have suffered prejudice.  *See* 29
19  U.S.C. § 2617; *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002) ("The
20  employer is liable only for compensation and benefits lost 'by reason of the violation,' . . .
21  for other monetary losses sustained 'as a direct result of the violation,' . . . and for
22  'appropriate' equitable relief, including employment, reinstatement, and promotion.").
23  The FMLA provides for "damages only insofar as they are the actual monetary losses of
24  the employee such as salary and benefits and certain liquidated damages." *Farrell v. Tri-*
25  *Cnty. Metro. Transp. Dist. of Or.*, 530 F.3d 1023, 1025 (9th Cir. 2008) (citing *Brumbalough*
26  *v. Camelot Care Ctrs, Inc.*, 427 F.3d 996, 1007 (6th Cir. 2005)).

27         Defendants argue that, because Boone was never able to return to work, he suffered
28  no prejudice as a matter of law.  Ultimately, this argument overlaps with the analysis on

Boone's interference claim, because the issue at summary judgment is whether there was a dispute of fact regarding Boone's ability to return to work, thereby allowing him the chance to earn the wages and benefits he purports to have lost.  As stated above, the record evidence, including Boone's and Dr. Turnage's statements in their depositions, show that Boone never recovered from his disability enough to return to work.  Again, this is contradicted by Boone's declaration attached to his Opposition, but as stated above, the declaration contradicting Boone's previous emails, Boone's deposition testimony, and Dr. Turnage's deposition testimony does not create a genuine dispute of material fact.

Accordingly, Boone, by his own admission, could not work.  Because he could not work, he could not earn wages and benefits.  Since he could not earn wages and benefits, his termination did not cause him to lose wages or benefits from his job, and he therefore did not suffer prejudice as required for an FMLA claim.  This is the exact situation at which 29 C.F.R. § 825.216(c) is directed—Boone never recovered enough to "perform an essential function of the position," so he never had a "right to restoration to another position under the FMLA," and therefore cannot be said to have suffered the kind of harm compensable under the FMLA.

Boone also argues that there is a triable issue of fact on damages because he has "suffered greatly financially and physically / emotionally," and because after he was fired "he went into a deep depression, and has been in treatment, incurring treatment costs."  The FMLA, however, does not provide damages for emotional distress.  *See Farrell*, 530 F.3d at 1025 (citing *Brumbalough*, 427 F.3d at 1007).

The question is closer if the Court assumes that the action was in fact retaliatory.  But even if the firing was retaliatory, Boone could not have shown up for work, so he cannot show that he suffered prejudice as required under the FMLA.

Because Boone was unable to work to earn wages or benefits, the Defendants caused him no prejudice when they fired him.  Accordingly, the Defendants are entitled to summary judgment in their favor.

/ / /

### E.    *Summary Judgment for Supervisors*

As this Court noted in its Order Granting in Part and Denying in Part Motion to Dismiss First Amended Complaint, the Ninth Circuit has not squarely decided whether supervisory employees can be sued as employers under the FMLA, but has noted in dicta that it "agree[s] with other circuits" that they can.  (ECF No. 11, at 12 (citing *Hibbs v. Dep't of Human Res.*, 273 F.3d 844, 872 (9th Cir. 2001) *aff'd sub nom. Nev. Dep't of Human Res. v. Hibbs*, 538 U.S. 721 (2003)).)

Because the Court concludes that Defendants are entitled to summary judgment, the Court does not reach their alternative Motion for Partial Summary Judgment.

**CONCLUSION**

For the foregoing reasons, the Court finds that Defendants are entitled to summary judgment because there is no genuine dispute of material fact in this case and Defendants are entitled to judgment as a matter of law.   Accordingly, the Court **GRANTS** the Defendants Motion for Summary Judgment.   The Clerk of the Court shall close the file.

**IT IS SO ORDERED.**

Dated:  November 3, 2015

Hon. Janis L. Sammartino
United States District Judge